CALVIN L. LITSEY (CA SBN: 289659)
**FAEGRE BAKER DANIELS LLP**
1950 University Avenue, Suite 450
East Palo Alto, CA 94303
Telephone: 650-324-6700
Facsimile: 650-324-6701

JARED B. BRIANT (CO SBN: 35773)*
**FAEGRE BAKER DANIELS LLP**
1144 15th Street, Suite 3400
Denver, CO 80202
Telephone: 303-607-3500
Facsimile: 303-607-3600

PATRICK C. BOTTINI (MN SBN: 0395278)*
**FAEGRE BAKER DANIELS LLP**
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN 55402
Telephone: 612-766-7000
Facsimile: 612-766-1600

JESSIE PELLANT (CO SBN: 42096)*
**STUDIOIP**
600 17th St., Suite 2800
Denver, CO 80202
Telephone: 720-443-1773

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CALIFORNIA BEACH CO., LLC., <br><br> Plaintiff, <br><br> v. <br><br><br> MR. HAN XIAN DU <br><br> Defendant. | Case No. 19-cv-08426-JSC <br><br><br><br> **MOTION FOR TEMPORARY RESTRAINING ORDER** |

Plaintiff California Beach Company ("CBC") seeks pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 65-1, a temporary restraining order to enjoin Defendant Han Xian Du from knowingly misrepresenting his copyright interests to CBC's key online service providers, including Facebook, Instagram, and Amazon, in a clear scheme to benefit himself and his own customer and irreparably harm CBC by causing, through his false statements, these service providers to remove CBC's pages and content during the critical holiday sales season.

## I.   INTRODUCTION

CBC seeks an emergency order halting the severe and ongoing harm caused by Defendant's malicious and false representations of copyright infringement to Facebook, Instagram, and Amazon via each of those third parties' Digital Millennium Copyright Act ("DMCA") takedown procedures. Unfortunately, Defendant's misrepresentations were successful in causing each of these critical online service providers to remove CBC's products and advertising content, thereby causing much of CBC's online sales to grind to a halt at the apex of the holiday sales season. Defendant's wrongful actions have already caused irreparable harm to CBC and pose an existential threat to CBC if not reversed immediately because the overwhelming majority of CBC's daily sales come from customers who find CBC on Facebook, Instagram, or Amazon.

Accordingly, CBC seeks: an immediate restraining order directing Defendant to retract the DMCA takedown notifications that he submitted to Facebook, Instagram, and Amazon.com; directing Facebook, Instagram, and Amazon.com to reinstate the CBC pages and content that were removed pursuant to Defendant's takedown notifications; and directing Defendant to show cause why a preliminary injunction should not issue.

## II.  STATEMENT OF FACTS

### A.  CBC's Business Relies Upon Its Strong Internet Presence

Founded in California in 2018, CBC is a leading seller of playpens. (Declaration of Austin Wright ("Wright Dec."), *filed herewith*, ¶ 3.)  CBC's product, the Pop n' Go® Playpen, is protected in the United States by California Beach Company's U.S. Trademarks (Wright Dec., Ex. A) and U.S. Design Patent No. 862,913 (Wright Dec., Ex. B), which was filed on December 21, 2017 (the "'913 Patent").  CBC conducts its business through online service providers, primarily including Facebook, Instagram, Amazon, and CBC's own website. (Wright Dec. ¶ 3.)  CBC relies heavily on its online presence, including its social media presence, to market its products and direct potential customers to websites at which customers can buy CBC's products.  (*Id.*)  This strong online and social media presence is particularly important to CBC during the holiday sales season, during which CBC—like most US retail business—sees a significant increase in sales. (Wright Dec. ¶ 21-22.)

As part of CBC's social media presence, CBC maintains a company profile on Facebook and a company Instagram account to promote its products and brands. CBC's Facebook profile could be accessed online at www.facebook.com/thecaliforniabeachco/ until December 19, 2019.  CBC's Instagram account is accessible at https://www.instagram.com/thecaliforniabeachco.  CBC's internal research indicates that CBC's Facebook and Instagram account drive as much as **98% of CBC's total revenue**.  (Wright Dec. ¶ 20.)

**B.     CBC's Claims Against Mr. Du's Customer, Exqline**

In late 2019, CBC engaged Defendant's US customer, Exqline, which also sells playpens online, about Exqline's infringement of CBC's trademark and patent rights.  (Wright Dec. ¶ 5, Ex. C.)  CBC engaged Exqline in discussions to try to resolve CBC's trademark and patent claims without litigation.  (*Id.*)  In those discussions, Exqline stated a belief that its products had been designed by Mr. Du, but neither Exqline, Defendant, or their counsel ever claimed ownership of any copyright covering any material CBC has ever used or posted on its social media sites.

**B.     Mr. Du's Wrongful Filing of the DMCA Notifications**

On December 19, 2019, several weeks after CBC had initiated these discussions with Exqline and Defendant and without warning, Facebook and Instagram informed CBC that various CBC content had been flagged by a third

party and removed based on the third party's assertion of copyright infringement. (Wright Dec. ¶¶ 10-11, 17, Ex. E, Ex. F.)  The notices indicated that the third party who invoked the DMCA notification procedure was "Han Xian Du"—the Defendant—whose email address was submitted as duhanxian@hotmail.com. (Wright Dec., Ex. E.)  The Instagram removal notice indicated that Defendant designated the allegedly infringed works as "Copyright: other."  (*Id.*)  Per Facebook's and Instagram's protocols, CBC was provided only with Mr. Du's name and email address, but no information on what copyrights CBC was purportedly violating.

C. **Events Precipitating CBC's Motion for Temporary Restraining Order**

Upon receiving Facebook and Instagram's removal notices, CBC reached out to Defendant to inquire as to the basis of his takedown requests and to inform him that any copyright allegations were false and injurious.  (Wright Dec. ¶ 23, Ex. G.)  Defendant never responded.  (Wright Dec. ¶ 23.)  CBC also reached out to counsel for Exqline, but to no avail.  (Wright Dec. ¶ 24, Ex. C.)  On December 25, 2019, CBC received a notice from Amazon.com that one of its playpen products was removed in response to a DMCA takedown notification.   (Wright Dec. ¶¶ 25-27, Ex. H.)  Amazon provided a name of the "rights owner" responsible for filing the DMCA takedown notification as "Smartgpsbd Davis" and "Smartgpsbd Liu," and the corresponding email provided is smartgpsbd@outlook.com.  (Wright Dec., Ex. H.)  On December 26, 2019, counsel for CBC has reached out to the email address

- 4 -

to inquire regarding the grounds of the DMCA notification but has not received a response.  (Wright Dec. ¶ 26.)

### III.   LEGAL STANDARD

The standard for obtaining a temporary restraining order is the same as the standard for obtaining a preliminary injunction. *California Independent System Operator Corp. v. Reliant Energy Services, Inc.*, 181 F.Supp. 2d 1111, 1126 (E.D. Cal. 2001).  Under that standard, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Defense Council, Inc.*, –––– U.S. ––––, 129 S. Ct. 365, 374 (2008).   In the Ninth Circuit, court's issue TRO's when there are "'serious questions going to the merits and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1053 (9th Cir. 2010).

### LEGAL ARGUMENT

A.   **This Court Has Jurisdiction.**

Because this action is based on Defendant's filing of takedown notifications under the DMCA, this Court has specific personal jurisdiction.  *See Amaretto Ranch Breedables v. Ozimals, Inc.*, No. C 10-05696 CRB, 2010 WL 5387774, at *1

(N.D. Cal. Dec. 21, 2010) ("This Court concludes on the record presently before it that it has at least specific personal jurisdiction over Defendant in connection with Plaintiff's section 512 claim. Defendant filed a DMCA Takedown Notification with a California company regarding another California company. That Notification is at issue."); *see also YAHOO! Inc. v. La Ligue Centre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205–1206 (9th Cir.2006); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008).

**B.   CBC Is Entitled to a Temporary Restraining Order.**

To obtain a temporary restraining order or preliminary injunction, a party must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).  In the Ninth Circuit, "serious questions going toward the merits and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Design Furnishings, Inc. v. Zen Path, LLC*, No. CIV. 2:10-CV-2765-WB, 2010 WL 5418893, at *4 (E.D. Cal. Dec. 23, 2010) (quoting *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1053 (9th Cir. 2010.)  Here, the multitude of "serious questions" surrounding Defendants' knowingly baseless copyright allegations

coupled with the existential threat CBC now faces as a direct result of these allegations decisively warrant immediate injunctive relief.

### 1. Plaintiff Is Likely to Succeed on Its DMCA Claim

CBC is likely to succeed on the merits its DCMA claim, which requires CBC to demonstrate that "[Defendant] knowingly materially misrepresent[ed] . . . that material or activity is infringing" thereby causing injury to CBC "as the result of [a] service provider . . . removing or disabling access to the material or activity claimed to be infringing."  17 U.S.C. § 512(f).  As discussed more fully below, there is no question that CBC has been damaged—severely—directly as a result of the disabling of its Facebook page and removal of content from Instagram and Amazon.  And there also is no question that the service providers—Facebook, Instagram, and Amazon—disabled or removed CBC's content in response to Defendant's DMCA takedown requests based on purported copyright infringement. (Wright Dec. ¶¶ 10-11, 17, 26-27, Ex. E, Ex. F, Ex. H.)

Thus, whether CBC can show the necessary likelihood of success on its DMCA claim boils down to whether Defendant "knowingly, materially misrepresented" his ownership in copyright interests to Facebook, Instagram, and Amazon when invoking these service providers takedown procedures.  There is every reason to believe Defendant's representations to the service providers was not only knowingly and materially false, but maliciously calculated to disrupt CBC's lawful online sales during the critical online sales season in order to benefit

Defendant's own customer, Exqline, which is involved in a separate intellectual property dispute with CBC.  Conversely, there is no reason to believe that Defendant's misrepresentations were somehow innocent or intended to vindicate perceived legitimate copyright interests.  Consider:

- CBC immediately contacted Defendant after learning that Defendant had caused the takedowns, requesting that Defendant provide copyright information substantiating the takedown requests. Defendant never responded.  (Wright Dec. ¶¶ 10-11, 17, Ex. E, Ex. F.)  The U.S. Copyright database contains no record of any copyrighted works registered by Defendant or his customer, Exqline.  (Bottini Declaration ¶ 2.)

- All of the CBC content that has been removed or disabled by the service providers was created by or for CBC.   (Wright Dec. ¶¶ 11-16, 18-19, 28.)

- The only products shown or otherwise depicted or discussed within the now disabled/removed CBC content was CBC's own products.  (Wright Dec. ¶ 19.)

- Immediately prior to Defendant's takedown requests, CBC was engaged in extensive communication with Defendant's US customer—Exqline—in connection with Exqline's violation of CBC's intellectual property rights.  Exqline has never mentioned or identified any

copyrights purportedly owned by Defendant or Exqline that could bear on the parties' intellectual property dispute. (Wright Dec. ¶¶ 5-6, Ex. D.)

As the above facts make clear, there is no evidence that Defendant could possibly make a colorable claim of copyright infringement against CBC, which would require Defendant to show (1) ownership of a valid copyright in specific works; and (2) copying of those works by CBC. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999). Here, there is no evidence that Defendant holds any valid U.S. copyright in any works at all, let alone works that appeared on any of CBC's social media or online retail sites. CBC gave Defendant an opportunity to identify any copyrights he believes he owns, and he identified none—in fact, he did not respond to CBC at all when asked to explain the substance behind his takedown requests to the service providers. (Wright Dec. ¶ 23.) And when CBC searched for valid copyrights owned by Defendant or his customer Exqline, it found no registered copyrights at all. (Bottini Declaration ¶ 2.) Moreover, all of the CBC content that has been disabled or removed by the service providers was created by or for CBC and depicted no products other than CBC's own playpens. (Wright Dec. ¶¶ 11-16, 18-19, 28.) To the extent there were original, protectable works of authorship created in CBC's social media content, the rights to such works would flow to CBC or one of its independent contractors.

There simply is no kernel of legitimacy or reality to be found that could reasonably cause someone to think—even mistakenly—that Defendant has an arguable copyright claim against CBC based on content appearing on the service providers' websites or anywhere else.  Indeed, Defendant's refusal to respond to CBC's emails asking for the basis of the copyright claims behind has takedown requests demonstrates that he knows that he had none—in other words, Defendant knows he misrepresented his copyright interests when causing the service providers to remove CBC's content.

Courts in the Ninth Circuit have granted TRO's after finding the required showing of likelihood of success on DMCA § 512(f) claims, including knowing misrepresentations of copyright ownership by defendants, under circumstances less clear and straightforward as those here.  For example, in *Design Furnishings*, the defendant had at least attempted to secure federal copyright protection with copyright registrations before invoking the security provider's DMCA takedown procedures, and thus was at least able to identify pending copyright registrations as a basis for its copyright claims.  2010 WL 5418893, at *2 (E.D. Cal. Dec. 23, 2010).  Nonetheless, the court found that the defendant had made knowing misrepresentations of copyright ownership based on the Copyright Office's ultimate rejection of the registrations and the court's preliminary determination that defendant's purported works were not eligible for copyright protection.  *Id*. at *5.

Similarly, in *Amaretto*, the defendant was at least able to identify **something** in its DMCA takedown requests that it believed was subject to copyright protection—specifically, virtual online farm animals enabled by defendant's computer software. 2010 WL 5387774, at *2 (N.D. Cal. Dec. 21, 2010). But the court easily found the requisite "serious questions" supporting a likelihood of success of plaintiff's DCMA claims—including that defendant's DCMA takedown requests included knowing misrepresentations—because "software copyright protection does not apply to functionality." *Id*.

Using *Design Furnishings* and *Amaretto* as guideposts for determining when the evidence of knowing, material misrepresentations in takedown requests is strong enough to raise "serious questions" supporting a § 512(f) claim, serious questions are clearly present here. Here, unlike in *Design Furnishings* and *Amaretto*, Defendant cannot even identify anything appearing in CBC's removed content that he believes might be subject to copyright, and the copyright database indicates that neither he nor his customer have any valid copyrights. At a minimum, there are "serious questions" favoring the conclusion that Defendant knowingly misrepresented his copyright ownership to the service providers. Accordingly, CBC has met its burden on the likelihood of success factor.

## 2. Defendants' Fraudulent DMCA Takedown Request Irreparably Harmed, and Continues to Irreparably Harm, Plaintiffs' Goodwill and Business.

Defendant's strategic abuse of the takedown provisions of the DMCA to prevent CBC from selling its products during the critical holiday shopping season has already caused CBC irreparable harm in the form of lost and diverted customers, damage to CBC's reputation and goodwill, and the loss of tens of thousands of dollars in sales.  This irreparable harm is exactly the kind of harm that has led other courts to grant TRO's in similar circumstances will continue unless Defendant is enjoined.  *See Amaretto* (finding irreparable harm where plaintiff was losing customers during "prime buying season").

Business from consumers looking to make a holiday purchase has likely been lost forever as a result of Defendant's actions.  Similarly, CBC has missed out on an opportunity to make new customers during the busiest shopping stretch of the year.  In November 2019, for example, CBC made approximately $409,000 in sales.  Approximately $155,000 came directly through Facebook and $29,000 came directly through Instagram.  (Wright Dec. ¶ 20.)  Moreover, the primary way consumers learn of CBC and its products as well as the primary way consumers communicate with CBC are through its Facebook and Instagram pages.  (Wright Dec. ¶ 20.)  As a result, even the sales CBC makes directly through its website are highly attributable to its Facebook and Instagram accounts.  In fact, CBC's CEO estimates that ninety-eight percent of CBC's sales are driven by its Facebook and

Instagram pages. (*Id.*) With those pages down or substantially limited, CBC's business has effectively come to a halt.

In addition to the monetary loss, Defendant's reputation and goodwill are also being irreparably damaged. CBC services many of its customers through its Facebook and Instagram pages. By providing inconsistent and unreliable internet service through these pages, consumers are likely to get the impression that CBC is an unstable operation that cannot be trusted.

The irreparable harm already caused to CBC will continue if immediate injunctive relief is not granted. Because a service provider is required to take down the claimed offending products as soon as a proper DMCA notice has been filed and they will remain down for at least 14 days following a counter-notification, alternative relief is at least still a week away. *See* 17 U.S.C. § 512(c) and 17 U.S.C. § 512(g). Disrupting up to ninety-eight percent of CBC's business for an additional seven days or more will compound the irreparable harm that has already been done for which there is no sufficient monetary remedy.

### 3. The Balance of Hardships Tips Decidedly in CBC's Favor.

Here, the balance of hardships tips definitively in favor of CBC. As in *Amaretto*, "if the injunction is not issued [CBC] will suffer harm to its business that could be severe enough to impact its ability to continue as a going concern. On the contrary, if [CBC] is allowed to continue to market and sell its products as it currently does, Defendant can obtain money damages from [CBC] if [CBC] is in

fact infringing Defendant's copyright." 2010 WL 5387774, at *3 (N.D. Cal. Dec. 21, 2010). Here, Defendant's wrongful DMCA takedown requests pose an existential threat to CBC, yet Defendant has not even identified any specific copyright interests he thinks he owns or any damage he believes he may suffer if CBC's removed content is restored by the service providers.

### 4. A Temporary Restraining Order Will Serve the Public Interest.

The public interest portion of the preliminary injunction test asks "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Independent. Living Ctr. of So. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 659 (9th Cir.2009) (*quoting Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed.Cir.1988)). Here, there is no identifiable public interest that will be negatively affected by granting Plaintiff preliminary relief. If anything, the public has an interest in assuring that the DMCA compliance procedures established by major online service providers (here, Facebook, Instagram, and Amazon) are not abused for nefarious purposes through meritless copyright infringement claims. This factor weighs in favor of CBC.

### B. Plaintiffs Will Post a Security Bond Determined by the Court.

Under Rule 65(c), "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "However, district courts have

considerable discretion in determining whether the posting of a bond is necessary: Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*. In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Walls v. Wells Fargo Bank, N.A.*, No. 17-CV-02199-HSG, 2017 WL 1478961, at *4 (N.D. Cal. Apr. 25, 2017) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)); *see also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction."); *Lane v. CitiMortgage, Inc.*, No. 2:14-CV-02295 KJM, 2014 WL 5036512, at *2 (E.D. Cal. Oct. 7, 2014) (Where "there is no evidence in the record that defendants will suffer damages from the restraining order the plaintiff may not be required to post any security.").

There is no evidence that Defendant will suffer any harm from the issuance of a restraining order. Moreover, there is overwhelming evidence that CBC will succeed on the merits of its DMCA claim. Consequently, bond should not be required here. Nonetheless, CBC stands ready, willing and able to post a bond should the Court find any realistic risks suffered by Defendant.

## IV. CONCLUSION

For the foregoing reasons, the Court should enter the requested restraining order as soon as possible. Defendant has been notified through the email addresses he provided to Facebook, Instagram, and Amazon that CBC intended to seek this emergency relief.

Dated: December 27, 2019        **FAEGRE BAKER DANIELS LLP**

                            By:   */s/ Calvin L. Litsey*
                                  CALVIN L. LITSEY (CA SBN: 289659)
                                  950 University Avenue, Suite 450
                                  East Palo Alto, CA 94303
                                  Telephone:   650-324-6700
                                  Facsimile:   650-324-6701

                                  *Attorneys for Plaintiff,*

                                  **CALIFORNIA BEACH COMPANY**